IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


**JUAN VILLALOBOS,**                                    Case No. 6:12-CV-01846-SU

       Plaintiff,

  v.                                                           **FINDINGS AND
RECOMMENDATION**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

       Defendant.
_____

SULLIVAN, Magistrate Judge:

     Juan Villalobos ("plaintiff") brings this action pursuant to the Social Security Act (the

"Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of

Social Security ("Commissioner").    The Commissioner denied plaintiff's applications for

Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and

XVI of the Act.  For the reasons set forth below, the Commissioner's decision should be affirmed.


Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for SSI and DIB in October 2008.  Tr. 11, 128-142.  After the applications were denied initially and upon consideration, plaintiff requested a hearing before an administrative law judge ("ALJ").  Tr. 11, 64-84.  On March 29, 2011, the ALJ held a hearing,[1] at which plaintiff was represented by counsel and testified with the assistance of a Spanish interpreter.  Tr. 11, 28-55.  Vocational Expert ("VE") Kay Wise and plaintiff's wife, Priscilla Villalobos, were also present and testified at the hearing.  *Id.*  On April 18, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  Tr. 8-18.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Thereafter, plaintiff filed an appeal in this court.

## FACTUAL BACKGROUND

Born on March 12, 1970, plaintiff was 36 years old on the alleged onset date of disability, and 41 years old at the time of the hearing.  Tr. 32, 153.  Plaintiff was born in Sinaloa, Mexico, and has a second grade education.  Tr. 32.  He has past relevant work experience as a spot welder, assembler, cleaner, and auto body helper.  Tr. 52, 153-154, 177.  Plaintiff alleges disability beginning on January 28, 2007, due to bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD", borderline intellectual functioning ("BIF"), and alcohol dependence.  Tr. 13.

---

[1] The hearing was originally scheduled for December 10, 2010, at which plaintiff appeared with his wife.  Tr. 56-59.  The ALJ chose to postpone the hearing after determining plaintiff would benefit from the assistance of a Spanish interpreter.  *Id.*  The hearing was rescheduled for March 29, 2011.  Tr. 114.

## STANDARD OF REVIEW

The court's review is limited to whether the Commissioner's decision was based on proper legal standards and supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988) (citing *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F. 2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996) (citing *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must consider both evidence that supports and detracts from the Commissioner's decision, but the decision shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ's decision is conclusive, *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

The Commissioner engages in a sequential process ranging between one and five steps to determine whether an individual is disabled under the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see* 20 C.F.R. §§ 404.1520, 416.920 (describing the five step sequence).

Step-one requires the ALJ to determine whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step-two, the ALJ must determine if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled. *Id.*

At step-three, the ALJ must determine whether the severe impairment, or combination of impairments, meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ determines the impairment, or combination of impairments, equals a listed impairment, then the claimant is presumed disabled. *Id.*

If the adjudication proceeds beyond step-three, the ALJ must first evaluate the medical and other relevant evidence and determine the claimant's residual functional capacity ("RFC"). The RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ uses this information to determine if the claimant can perform his past relevant work at step-four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step-five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish disability. *See Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). If the analysis reaches the fifth step, the burden shifts to the Commissioner to show that jobs within the claimant's RFC exist in the national

Page 4 - FINDINGS AND RECOMMENDATION

economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step-one of the sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since January 28, 2007, the alleged onset date. Tr. 13, Finding 2. Although plaintiff worked after the alleged onset date, his work did not rise to the level of substantial gainful activity because plaintiff earned less than the required amount. *Id.* At step-two, the ALJ found plaintiff had the following severe impairments: bipolar I disorder, anxiety disorder NOS, ADHD, BIF, and alcohol dependence. *Id.*, Finding 3. At the third step, the ALJ found plaintiff's impairment, or combination of impairments, did not meet or equal the requirements of a listed impairment. Tr. 14, Finding 4.

Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: plaintiff is "limited to the performance of unskilled work (he can perform simple, repetitive work on a consistent basis and can learn from short, direct instruction. He can attend to simple tasks on a consistent basis)." Tr. 15, Finding 5.

At step four, the ALJ found plaintiff was "capable of performing past relevant work as an assembler (DOT# 762.684-014, SVP 3, medium), cleaner II (DOT# 919.687-014, SVP 2, medium), auto body repair helper (DOT# 807.687-010, SVP 2, medium), and forestry worker (DOT# 452.687-010, SVP 2, heavy)." Tr. 18, Finding 6. Based upon these findings, the ALJ determined plaintiff

was not disabled within the meaning of the Act and, accordingly, was not entitled to benefits. *Id.*, Finding 7.

## DISCUSSION

Plaintiff alleges the ALJ erred by: (1) failing to provide sufficient reasons to reject plaintiff's testimony; (2) improperly rejecting the lay witness testimony; and (3) failing to properly account for plaintiff's limitations when making the RFC assessment. *See* Pl.'s Opening Br. 2.

## I.    Plaintiff's Credibility

Plaintiff first argues the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting his subjective symptom testimony. *Id.* at 4-5.

When a claimant has a medically documented impairment that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that a claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ determined plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible. Tr. 16. Although the ALJ did not explicitly list the reasons for discounting plaintiff's credibility, his summary of the facts and discussion of the evidence provide sufficiently specific, clear, and convincing reasons for doing so. Tr. 15-17.

First, the ALJ noted several times that plaintiff failed to follow prescribed medical treatments. Tr. 16-17. The ALJ may rely on plaintiff's "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" when making a credibility determination. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). Likewise, the Social Security Rulings ("SSR") provide the claimant's statements may be less credible "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, available at 1996 WL 374186 (July 2, 1996).

Here, the record supports the ALJ's finding. Ms. Villalobos testified at the hearing that plaintiff "has thrown his medications away in the past and then he says, I don't want to take it anymore . . ." Tr. 48. On October 4, 2006, Dr. Mark Vanderburgh reported plaintiff had "been on Paxil in the past but is currently not taking it. He just stops taking it when he feels it is not necessary." Tr. 257. In September 2008, Ms. Villalobos brought plaintiff to the emergency room acutely intoxicated, and she reported at that time plaintiff was noncompliant with his medication regime. Tr. 276. Plaintiff was again admitted to the emergency room three months later in

Page 7 - FINDINGS AND RECOMMENDATION

December 2008, and at that time Ms. Villalobos again reported plaintiff had stopped his bipolar medication.  Tr. 320; *see also* Tr. 16-17 (ALJ summarizing the above-listed evidence).

Plaintiff contends his failure to follow the prescribed treatment should be excused due to his mental impairment.  Pl.'s Reply Br. 3.  Plaintiff relies on *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), arguing his failure to properly follow his medical treatment for a mental disorder is not a substantial basis on which to discredit his testimony.  *Id.*  However, *Nguyen* is distinguishable because the court in that case was considering the ALJ's analysis of a doctor's opinion, whereas in this case the analysis is regarding plaintiff's credibility.  Moreover, to the extent the decision *Nguyen* can be applied to claimant's credibility, its reasoning was limited by *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).  In *Molina*, the Ninth Circuit held it was reasonable for the ALJ to rely on claimant's failure to seek psychiatric treatment in assessing her credibility because "there was no medical evidence that [claimant]'s resistance was attributable to her mental impairment rather than her own personal preference."  *Id*. At 1114.  Like *Molina*, plaintiff in this case did not provide evidence his failure to properly follow prescribed treatment was due to his mental impairment.  Without such evidence, it was reasonable for the ALJ to conclude plaintiff's lack of compliance with his medical regime weakened his credibility.

Second, the ALJ noted plaintiff was not forthcoming at the hearing about the impact of his alcohol abuse on his health and his employability:  "[a]t the hearing, neither the claimant nor his wife acknowledged the role that alcohol abuse plays in the claimant's mood swings and in this claim for disability.  In fact, neither of them said anything about alcohol at all."  Tr. 16.  Plaintiff contends it is improper for the ALJ to discredit plaintiff's credibility for this reason because plaintiff was never asked about his alcohol consumption at the hearing.  Pl.'s Reply Br. 2-3.  Plaintiff further

argues he has been forthcoming in the past when reporting his alcohol consumption to doctors and on his Social Security Administration forms. *Id.*

 At the hearing, when asked what rendered him unable to work, plaintiff testified it was due to his medication: "[t]he medicines I take, they're really strong and I get dizzy. I feel tired and sleepy." Tr. 35. However, Dr. Sandra Gonzalez administered a neuropsychological evaluation with plaintiff in September 2010, at which time plaintiff stated he had problems keeping employment due in part to his alcohol consumption on Sundays "and then [he would] be too depressed and unmotivated to go to work." Tr. 379. The record contains evidence plaintiff was admitted to the hospital on at least three separate occasions within two years of his alleged onset date of disability for acute alcohol intoxication: June 2007, September 2008, and December 2008. Tr. 266-276, 316-321. Given these facts, it is reasonable for the ALJ to find plaintiff's testimony at his hearing less than candid when plaintiff failed to mention alcohol abuse as a factor in his claim for disability or as a contributing factor in maintaining employment. The ALJ's interpretation of the evidence is therefore reasonable and supported by substantial evidence. *Batson v. Comm'r*, 359 F.3d 1190, 1993 (9th Cir. 2004).

 The ALJ mentioned other inconsistent statements in plaintiff's testimony that contributed to his credibility finding such as plaintiff's testimony he had not worked since the alleged onset of disability which was contradicted in the record of his reported earnings. Tr. 16. The ALJ provided clear and convincing reasons, supported by substantial evidence, regarding plaintiff's lack of credibility. As such, the ALJ provided sufficient reasons to discredit plaintiff's testimony and the ALJ's decision is therefore sufficient. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Page 9 - FINDINGS AND RECOMMENDATION

## II.    <u>Lay Witness Testimony</u>

Plaintiff next asserts the ALJ improperly rejected the lay witness testimony provided by his wife, Ms. Villalobos.  *See* Pl.'s Opening Br. 6-7.

Lay witness testimony as to a claimant's symptoms is competent evidence the ALJ must consider.  *Dodrill*, 12 F.3d at 919.  If the ALJ expressly decides to disregard such testimony, the ALJ "must give reasons that are germane to each witness."  *Id.*  However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness by witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (lay testimony may be rejected where it is inconsistent with the claimant's daily activities or the objective medical evidence).

In this case, Ms. Villalobos testified at plaintiff's hearing on March 29, 2011.  Tr. 42-51. When asked whether plaintiff would have a difficult time working, Ms. Villalobos stated her main concerns were plaintiff's medication, which effects his ability to concentrate and retain information, and his lack of social skills, which makes it difficult for him to receive criticism.  Tr. 44.  The ALJ rejected Ms. Villalobos's statements for two reasons; both of these reasons were also reasons the ALJ gave for discrediting plaintiff's testimony.  First, the ALJ noted while the record contains significant evidence of plaintiff's alcohol abuse and it's effects on his claim for disability, neither plaintiff nor Ms. Villalobos acknowledged alcohol abuse at the hearing, in fact, "neither of them said anything about alcohol at all."  Tr. 16, 266-276, 316-321.  Given this inconsistency, it is reasonable

for the ALJ to conclude Ms. Villalobos's testimony was less than candid.  Second, Ms. Villalobos reported plaintiff suffered from seizures.  Tr. 16, 186-189.  However, the ALJ noted the inconsistency between Ms. Villalobos's statements about plaintiff's seizures and the objective medical evidence, stating "the claimant had a normal EEG."  Tr. 16.  The ALJ may consider inconsistencies between a witness's testimony and the objective medical evidence.  *Thomas*, 278 F.3d at 959.  Therefore, the ALJ properly considered this inconsistency when evaluating Ms. Villalobos's credibility.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony.  Thus, it follows that the ALJ did not err in discrediting Ms. Villalobos's testimony for those same reasons.  *See Valentine*, 574 F.3d at 694; *see also Khal v. Astrue*, 2013 WL 876290 at *6 ("'the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well' to lay testimony") (quoting *Molina*, 674 F.3d at 1117.)  Accordingly, the ALJ's decision to reject the lay witness testimony should be upheld affirmed.

## III.    RFC Assessment

Finally, plaintiff argues the ALJ failed to properly account for all of his limitations when making the RFC assessment.  *See* Pl.'s Opening Br. 8-11.  Specifically, plaintiff contends the ALJ gave controlling weight to non-examining State psychologist Joshua Boyd's opinion, yet failed to fully and accurately incorporate restrictions identified by Dr. Boyd when making his RFC assessment.  *Id.* at 10-11.  As such, plaintiff argues the hypothetical presented to the VE failed to account for all the evidence and therefore resulted in an erroneous step-four finding.  *Id.*

The RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of the jobs."  20 C.F.R. § 404, Subpt. P, App. 2

§ 404.1512(a).  Thus, the RFC is the most a claimant can do despite his or her limitations.  20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).  All of the claimant's impairments, both severe and nonsevere, must be considered when assessing the RFC.  *Id.*

In this case, the ALJ concluded plaintiff had the RFC "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant is limited to the performance of unskilled work (he can perform simple, repetitive work on a consistent basis and can learn from short, direct instruction.  He can attend to simple tasks on a consistent basis)."  Tr. 15.  In formulating plaintiff's RFC, the ALJ gave controlling weight to the non-examining State psychologists because their assessments were "well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the case record."  Tr. 17.  When making this determination, the ALJ specifically referenced three reports: two by Dr. Boyd, and one by State Psychologist Dorothy Anderson.

Dr. Boyd reported plaintiff was "able to perform simple, repetitive work on a consistent basis. [Plaintiff] is able to learn from short, direct instructions."  Tr. 354.  Dr. Boyd also stated plaintiff was able to "attend to a simple task on a consistent basis" and that he "works best in a setting in which praise is given on a consistent basis."  *Id*.  Additionally, Dr. Boyd recommended plaintiff "should avoid working [with] hazardous equipment due to [alcohol] use."  *Id.*  Dr. Anderson reviewed the evidence and agreed with the initial mental RFC assessment, which included "limitations to simple tasks."  Tr. 360.

Plaintiff argues the ALJ's RFC assessment failed to incorporate Dr. Boyd's limitations that he:  (1)  would work best in a setting in which praise was given on a consistent basis; (2) should

Page 12 - FINDINGS AND RECOMMENDATION

avoid working with hazardous equipment; and (3) could only attend to one simple task, as opposed to multiple simple tasks.  Pl's Opening Br. 10.

The language Dr. Boyd used when suggesting these limitations indicates the first two limitations are recommendations, as opposed to imperatives.  Nowhere in Dr. Boyd's opinion does he state plaintiff is incapable of working except under the recommended conditions.  Therefore, these first two suggestions are neither diagnoses nor statements of plaintiff's RFC.  *See Valentine*, 574 F.3d at 691-692.

Concerning the third limitation allegedly wrongfully omitted from the RFC, plaintiff argues Dr. Boyd limited him to a singular task, whereas the ALJ found "[plaintiff] can attend to simple tasks on a consistent basis."  Tr. 15.  In this context, and given the entire context of the state consultants' reports, this distinction is not meaningful and does not support further RFC restrictions. This is because Dr. Boyd's statement is equivocal; earlier in his opinion, Dr. Boyd stated "[plaintiff] is able to perform simple, repetitive work on a consistent basis."  Furthermore, Dr. Boyd's limitation to a singular task is contradicted by Dr. Anderson's report when she stated she agreed with Dr. Boyd's RFC assessment, which included "limitations to simple tasks."  Tr. 360. The ALJ gave controlling weight to both Dr. Boyd's opinion and Dr. Anderson's opinion.  Given the ambiguity, the ALJ's decision to rely on Dr. Anderson's statements regarding plaintiff's limitation to simple tasks was rational and should not be disturbed.  *See Carmickle*, 533 F.3d at 1165 (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("if the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ."))

**RECOMMENDATION**

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due December 30, 2013.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 11th day of December 2013.


/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge